UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: UNASSIGNED

| | |
|---|---|
| U.S. GLASS PRODUCERS COALITION<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES,<br><br>　　　　Defendant. | Court No.:  24-00199 |

## COMPLAINT

The U.S. Glass Producers Coalition ("GPC" or "Plaintiff"), by and through their counsel, allege and state as follows:

## ADMINISTRATIVE ACTION TO BE REVIEWED

1. Plaintiff seeks judicial review of negative material injury and threat of material injury determinations of the U.S. International Trade Commission (the "Commission") in the countervailing duty investigation of *Glass Wine Bottles from China*. Plaintiff contests certain factual findings and legal conclusions that resulted in the Commission's final negative injury determination. *See Glass Wine Bottles from China*, 89 Fed. Reg. 83,515 (Int'l Trade Comm'n Oct. 16, 2024). The determination and views are contained in *Glass Wine Bottles from China*, Inv. No. 701-TA-703 (Final), USITC Pub. 5550 (Oct. 2024) ("Final Determination" or "USITC Pub. 5550").

## JURISDICTION

2. This action is brought pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(ii). This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c), which confers the Court exclusive jurisdiction over civil actions under 19 U.S.C. § 1516a.

## STANDING OF THE PARTIES

3. Plaintiff is a Coalition consisting of Ardagh Glass Inc. and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (the "USW"). Ardagh is a U.S. producer of glass wine bottles, and the USW is a union representing workers at the production facilities of the known domestic producers of glass wine bottles, which include Ardagh's factories in Seattle, Washington; Madera, California; and Port Allegany, Pennsylvania as well as O-I Glass, Inc.'s factories in Kalama, Washington and Tracy, California. Plaintiff participated in the investigation and is an interested party as described in Section 771(9)(F) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677(9)(F). As Petitioner below, Plaintiff was also party to the investigation that led to the determination being challenged herein. Accordingly, Plaintiff has standing to bring this action under 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4. On October 16, 2024, the Commission published in the Federal Register its determination that the domestic industry was not materially injured or threatened with material injury in the countervailing duty investigation of *Glass Wine Bottles from China*. *See Glass Wine Bottles from China*, 89 Fed. Reg. 83,515 (Int'l Trade Comm'n Oct. 16, 2024). The Summons commencing this action was timely filed with this Court on October 30, 2024 (*see* ECF 10), pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and U.S.C.I.T Rules 3(a)(2) and 6(a).

5. This Complaint is filed within the time specified in 19 U.S.C. § 1516a(a)(2) and 28 U.S.C. § 2636(c), having been filed within 30 days of the filing of the Summons.

## STATEMENT OF CLAIM

6. The Commission's negative injury determination with respect to subsidized glass wine bottles from China is unsupported by substantial evidence on the record and otherwise not in accordance with the law as averred in Counts I through XXV set forth herein.

## HISTORY OF THE CASE

7. On December 29, 2023, Plaintiff filed Petitions alleging that certain glass wine bottles (hereinafter "wine bottles") imported from the People's Republic of China ("China"), the United Mexican States ("Mexico"), and Chile are being or are likely to be sold at less than normal value ("LTNV") within the meaning of section 731 of the Tariff Act of 1930, *codified as amended at* 19 U.S.C. § 1673 (hereinafter, "The Tariff Act"). Plaintiff further alleged that wine bottles imported from China are subsidized within the meaning of section 701 of the Tariff Act, *codified as amended* at 19 U.S.C. § 1671.

8. On January 5, 2024, the Commission published the institution of the antidumping investigations and countervailing duty investigations in *Glass Wine Bottles from Chile, China and Mexico*. *See Glass Wine Bottles from Chile, China, and Mexico*, 89 Fed. Reg. 809 (Int'l Tade Comm'n Jan. 5, 2024). The Commission held a staff conference on January 19, 2024, and the parties filed Post-Conference Briefs on January 24, 2024.

9. On February 12, 2024, the Commission reached a preliminary determination that there is a reasonable indication of material injury by reason of glass wine bottles from Chile, China and Mexico that were alleged to be sold in the United States at less than fair value and by imports of the subject merchandise that were alleged to be subsidized by the government

of China. *See Glass Wine Bottles from Chile, China and Mexico*, 89 Fed. Reg. 12,380 (Int'l Trade Comm'n Feb. 16, 2024). The preliminary views of the Commission were set forth in *Glass Wine Bottles from Chile, China and Mexico*, Inv. Nos. 701-TA-703 and 731-TA-1661-1663 (Prelim.), USITC Pub. 5493 (Feb. 2024).

10. On March 12, 2024, the Commission released draft U.S. producer, U.S. purchaser, importer and foreign producer questionnaires. Letter from Nanette Christ to Counsel (March 12, 2024).

11. On April 19, 2024, the U.S. Glass Producers Coalition submitted Comments on the Draft Questionnaires. Petitioner's Comments on Draft Questionnaires, *Certain Glass Wine Bottles from Chile, China, and Mexico*, Inv. Nos. 701-TA-703 and 731-TA-1661-1663 (Final) (April 19, 2024) (hereinafter "Petitioner's Comments on the Draft Questionnaires"). Petitioner submitted that, in the preliminary phase, the Commission did not collect data regarding the prices at which importers/distributors purchase subject imports. Petitioner urged the Commission to collect purchasing cost data of the importers/distributors as to both bulk and case packs in order to achieve an apples-to-apples comparison. *Id.* at 1-2. The Petitioner submitted that, in order to compare the price competition in the market, the Commission must collect sale prices from U.S. producers to distributors but also collect the acquisition costs of importer/distributors for their imported products. *Id.* at 3. Petitioner submitted that "{t}his comparison would capture the comparable prices to distributors of purchasing the domestic like product and the price of subject imports prior their resale at marked-up prices to end users by distributors." *Id.* Petitioner submitted that the appropriate comparison for sales from the largest U.S. producers to the largest purchasers (*i.e.*, distributors) is the U.S. producer's price, valued

4

f.o.b. U.S. point of shipment, and the import AUV, value landed, duty-paid. *Id.* at 6. The Commission ultimately collected this data as requested for pricing products 6, 7 and 8, which are pricing products that were bulk products. The Commission did not collect this information for case packed products. *See Final U.S. Importers' Questionnaire* at III-3. The fact that the Commission did not collect this information for case packed products impacted the reliability of the underselling analysis of pricing products 1 through 5 such that the only reliable underselling analysis is for pricing products 6, 7 and 8.

12. In advance of the final phase hearing, the U.S. Glass Producers Coalition submitted a Prehearing Brief on August 8, 2024. Petitioner's Prehearing Brief, *Glass Wine Bottles from Chile, China, and Mexico*, Inv. Nos. 701-TA-703 and 731-TA-1661-1663 (Final) (Aug. 8, 2024) (hereinafter "Petitioner's Prehearing Brief"). The Prehearing Brief addressed several issues of importance, the first of which is directly related to the Commission's decision to collect the import value, landed, duty-paid for the pricing products 6, 7 and 8 that represent wine bottles imported in bulk but not for the pricing products imported in case packs. Petitioner submitted that the underselling analysis of pricing products 6, 7 and 8 was carried out using the appropriate point of comparison, which was a comparison of sales from the largest U.S. producers to the largest purchasers (distributors) with the import value, landed, duty-paid. Petitioner's Prehearing Brief at 43-44. This data was not collected for pricing products 1 through 5, which are the pricing products imported in case packs. *Id.* at 44, 48-49. Petitioner explained in its Prehearing Brief that underselling for pricing products 6, 7 and 8 showed significant and increasing underselling in the latter half of the POI; underselling shown in the last five quarters of the POI (Q1 2023 through Q1 2024) for pricing products 6, 7 and 8. *Id.* at 44-45.

13. Another important issue that was addressed in the Prehearing Brief was related to price suppression and price depression. Regarding price suppression, it was submitted that the U.S. producers' total cost of goods sold ("COGS") as a percentage of net sales increased throughout the POI from 2021 through 2023 and through the interim period from interim 2023 through interim 2024. *Id.* at 40. In addition to discussing underselling, regarding price depression, the Prehearing Brief also highlighted that the price of glass wine bottles did not increase to the extent that would have been necessary in an inflationary environment given that the U.S. Producer Price Index ("PPI") increased by 30.4 percent. *Id.* at 41.

14. Petitioner also argued in its Prehearing Brief that there was considerable evidence of lost sales and lost revenues in the record, both collected by the Commission and submitted by the parties, that proved a causal connection between lower priced subject imports and negative effects for the domestic industry. *Id.* at 56-58.

15. Petitioner also submitted in its Prehearing Brief that 2021 was an aberrational year due to the COVID-19 pandemic and the corresponding global supply chain disruption. *Id.* at 3. However, between 2022 and 2023, Petitioner submitted that, based on the data provided in the Prehearing Report and the merchant market, the share of subject imports in the market increased with a further increase observed in interim 2024. *Id*.

16. With respect to threat, Petitioner also provided details regarding a large inventory overhang in the U.S., with U.S. producers' ratio of inventories to shipments increasing over the POI. *Id.* at 71. In addition, Petitioner submitted that foreign inventories also increased from interim 2023 through interim 2024 with the foreign ratio of subject imports to import shipments growing as a ratio to subject production and shipment. *Id.* In addition, it was submitted that arranged imports were high and that subject imports were surging on a

|  | relative basis in the first quarter of 2024. *Id.* Petitioner submitted that all of these factors indicate that the domestic industry will be harmed in the absence of trade relief. *Id*. at 72. Concerning adverse impact, Petitioner submitted that the domestic industry was in a "death spiral" and was highly vulnerable to further injury from unfairly traded subject imports. *Id.* at 70, 77. The term death spiral can refer to the elimination of a manufacturer's products which will result in spreading the fixed manufacturing overhead costs to fewer products. *Id.* at 77. |
|---|---|
| 17. | On August 14, 2024, the Commission held its final phase hearing, and on August 23, 2024, the U.S. Glass Producers Coalition submitted its Post-Hearing Brief. *See* Petitioner's Post-Hearing Brief, *Glass Wine Bottles from Chile, China, and Mexico*, Inv. Nos. 701-TA-703 and 731-TA-1661-1663 (Final) (Aug. 23, 2024) (Hereinafter "Petitioner's Post-Hearing Brief"). Petitioner's Post-Hearing Brief again addressed the existence of underselling for pricing products 6, 7, and 8, demonstrating that the majority of subject imports in the pricing data undersold the domestic product in 2023 and that the ratio increased in 2024. Petitioner's Post-Hearing Brief at 1. The Post-Hearing Brief addresses the market share increases of subject imports at the cost of the domestic industry based on shipments data from the questionnaire responses. *Id.* at 5. Among other topics, Petitioner's Post-Hearing Brief discussed the cost-price squeeze as demonstrated by increasing COGS as a percentage of net sales and also discussed the causal connection between subject impots and the cost-price squeeze, the massive inventory overhang, and the fact that Ardagh was forced to curtail its production at its Seattle plant. *Id.* at 2, 6-14. |
| 18. | On August 26, 2024, the U.S. Department of Commerce ("Commerce") issued its Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of |

   Critical Circumstances in *Certain Glass Wine Bottles From the People's Republic of China*. *See Certain Glass Wine Bottles From the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances*, 89 Fed. Reg. 68,395 (Dep't Commerce Aug. 26, 2024).

19. Commerce's final determinations in the antidumping investigations for all three subject countries, including China, Chile, and Mexico, were extended. *See Certain Glass Wine Bottles from the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, in part, and Postponement of Final Determination and Extension of Provisional Measures*, 89 Fed. Reg. 65,331 (Aug. 9, 2024); *Certain Glass Wine Bottles from Chile: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 65,325 (Aug. 9, 2024); *Certain Glass Wine Bottles From Mexico: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Negative Determination of Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 65,317 (Aug. 9, 2024).

20. Commerce did not postpone the investigations for the China countervailing duty decision, and the investigation schedules thus became staggered, resulting in an earlier decision in the final phase China countervailing duty investigation.

21. The record for each of the investigations, including the China antidumping, Chile antidumping, Mexico antidumping, and China countervailing duty investigations will be the same "except that, prior to the Commission's determinations in the antidumping duty investigations regarding Chile, China and Mexico, the Commission shall include the final

Commerce antidumping determinations and the parties' final comments concerning Commerce's later determinations in the record." *See* USITC Pub. 5550 at 4.

22. The Commission's confidential Final Staff Report was dated September 6, 2024. Final Staff Report to the Commission, *Glass Wine Bottles from Chile, China and Mexico*, Inv. Nos. 701-TA-703 and 731-TA-1661-1663 (Final) (Sept. 6, 2024).

23. On September 17, 2024, Petitioner submitted its Final Comments, which included comments on the Final Staff Report. Petitioner's Final Comments, *Certain Glass Wine Bottles from Chile, China, and Mexico*, Inv. Nos. 701-TA-703 and 731-TA-1661-1663 (Final) (Sept. 17, 2024) (hereinafter "Petitioner's Final Comments"). Among other submissions, Petitioner's Final Comments pointed out that a significant change in the Final Staff Report confirms that subject imports gained market share at the direct expense of the domestic industry for the last two-and-a-quarter years of the POI. Petitioner's Final Comments at 2. Petitioner also submitted that the Commission should consider this trend in conjunction with an acknowledgment that 2021 was an aberrational year such that greater probative value should be placed on the gain in subject import market share over the last two-and-a-quarter years of the POI. *Id.* at 3. In addition, Petitioner submitted that, based on the Final Staff Report, even greater underselling can be observed in pricing products 6, 7 and 8. *Id.* at 5. Petitioner also discussed the prevalence of confirmed lost sales and the evidentiary strength of the indicators of those confirmed lost sales. *Id.* at 8-10.

24. On October 16, 2024, the Commission released its final determination that the domestic industry was not materially injured or threatened with material injury by *Glass Wine Bottles From China*. *See Glass Wine Bottles From China*, 89 Fed. Reg. 83,515 (Oct. 16, 2024). The Commission's final determination contains several determinations that are not

supported by substantial evidence and are otherwise contrary to the law. *See* USITC Pub. 5550.

## COUNT I

25. Paragraphs 1 through 24 above are realleged and incorporated herein by reference.

26. The Commission's finding that the significant volume of imports, both by absolute volume and relative to consumption in the United States, did not have significant price effects or a significant adverse impact on the domestic industry, is not supported by substantial evidence and is otherwise contrary to law.

## COUNT II

27. Paragraphs 1 through 26 above are realleged and incorporated herein by reference.

28. The Commission's determination regarding the significance of overselling by subject imports in the pricing product data is unsupported by substantial evidence and is otherwise contrary to law.

## COUNT III

29. Paragraphs 1 through 28 above are realleged and incorporated herein by reference.

30. In particular, the Commission's determination that the underselling data, which demonstrated that pricing products 6 through 8 imports undersold the U.S. produced product in 44.3 percent of comparisons (by volume), was not significant, is not supported by substantial evidence and is otherwise contrary to law.

## COUNT IV

31. Paragraphs 1 through 30 above are realleged and incorporated herein by reference.

32. The Commission failed to address material evidence and arguments regarding the frequency of underselling, including the fact that more than 1 in 5 purchasers confirmed that they purchased imports, rather than domestically produced products, because imports

were lower priced, and accordingly the Commission's determination is not supported by substantial evidence and is otherwise contrary to law.

## COUNT V

33. Paragraphs 1 through 32 above are realleged and incorporated herein by reference.

34. The Commission's failure to meaningfully address known flaws in the pricing product data renders its price effects decision to be not supported by substantial evidence and otherwise contrary to law.

## COUNT VI

35. Paragraphs 1 through 34 above are realleged and incorporated herein by reference.

36. The Commission's failure to address arguments and evidence of price depression is not supported by substantial evidence and is otherwise contrary to law.

## COUNT VII

37. Paragraphs 1 through 36 above are realleged and incorporated herein by reference.

38. The Commission's determination that subject imports did not have significant price suppressing effects on the domestic industry is not supported by substantial evidence and is otherwise contrary to law.

## COUNT VIII

39. Paragraphs 1 through 38 above are realleged and incorporated herein by reference.

40. The Commission's determination regarding the lost sales and lost revenue evidence, including the contemporaneous business communications demonstrating purchasers buying subject imports due to lower prices and that such information did not detract from the other record evidence is not supported by substantial evidence and is otherwise contrary to law.

## COUNT IX

41. Paragraphs 1 through 40 above are realleged and incorporated herein by reference.

42. The Commission's failure to properly consider the magnitude of dumping in the investigation is not supported by substantial evidence and is otherwise contrary to law.

## COUNT X

43. Paragraphs 1 through 42 above are realleged and incorporated herein by reference.

44. The Commission's determination that the deterioration of the health of the domestic industry was commensurate with, and allegedly therefore due to, declines in apparent domestic consumption is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XI

45. Paragraphs 1 through 44 above are realleged and incorporated herein by reference.

46. The Commission's determination that there is no causal relationship between the subject imports and harm to the domestic industry is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XII

47. Paragraphs 1 through 46 above are realleged and incorporated herein by reference.

48. The Commission's determination that subject imports do not threaten the domestic industry with material injury is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XIII

49. Paragraphs 1 through 48 above are realleged and incorporated herein by reference.

50. The Commission's analysis failed to address material evidence and material arguments by the parties and is therefore not supported by substantial evidence and contrary to

law. Examples of the Commission failing to address material evidence and arguments of the parties include that 2021 was an aberrational year which was distorted by COVID-19 and the global supply chain crisis.

### COUNT XIV

51. Paragraphs 1 through 50 above are realleged and incorporated herein by reference.

52. The Commission failed to address material evidence and material arguments regarding the causal connection between subject imports and the curtailment of the Seattle manufacturing plant and as such its determination is not supported by substantial evidence and contrary to law.

### COUNT XV

53. Paragraphs 1 through 52 above are realleged and incorporated herein by reference.

54. The Commission's decision failed to meaningfully address that subject imports were gaining market share during the last two years of the period of investigation and accordingly its causation determination is not supported by substantial evidence and is otherwise contrary to law.

### COUNT XVI

55. Paragraphs 1 through 54 above are realleged and incorporated herein by reference.

56. The Commission's determination that found no causal connection between the domestic industry's financial performance in all three calendar years of the POI and subject imports is not supported by substantial evidence and is otherwise contrary to law.

### COUNT XVII

57. Paragraphs 1 through 56 above are realleged and incorporated herein by reference.

58. The Commission failed to examine material evidence and material arguments that the domestic industry entered the period of investigation in an injured state and its determination is therefore not supported by substantial evidence and is contrary to law.

## COUNT XVIII

59. Paragraphs 1 through 58 above are realleged and incorporated herein by reference.

60. The Commission's determination regarding market share shifts by subject imports during the 2021 through 2023 period as not indicative of material injury is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XIX

61. Paragraphs 1 through 60 above are realleged and incorporated herein by reference.

62. The Commission's determination that inventory levels were not indicative of injury to the domestic industry is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XX

63. Paragraphs 1 through 62 above are realleged and incorporated herein by reference.

64. The Commission's finding that the increase in subject imports from interim 2023 to interim 2024, as well as other facts in the record including arranged imports, inventory ratios, and other relevant facts, do not indicate that there is a likelihood of a significant increase in cumulated subject imports in the imminent future absent relief is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XXI

65. Paragraphs 1 through 64 above are realleged and incorporated herein by reference.

66. The Commission's determination regarding subject producers' export orientation as to glass wine bottles to the United States is not supported by substantial evidence and is otherwise contrary to law.

### COUNT XXII

67. Paragraphs 1 through 66 above are realleged and incorporated herein by reference.

68. The Commission's determination regarding likely price effects of subject imports in its threat analysis is not supported by substantial evidence and is otherwise contrary to law.

### COUNT XXIII

69. Paragraphs 1 through 68 above are realleged and incorporated herein by reference.

70. The Commission's decision that declines in production and shipments, which resulted in declining financial performance, was wholly unrelated to subject import competition is not supported by substantial evidence and is otherwise contrary to law.

### COUNT XXIV

71. Paragraphs 1 through 70 above are realleged and incorporated herein by reference.

72. The Commission's determination that the domestic industry is not vulnerable is not supported by substantial evidence and is otherwise contrary to law.

### COUNT XXV

73. Paragraphs 1 through 72 above are realleged and incorporated herein by reference.

74. The Commission's determination that subject imports are not likely to have a significant adverse impact in its threat analysis is not supported by substantial evidence and is otherwise contrary to law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   hold that the negative final material injury and negative threat *Final Determinations* by the Commission with respect to the countervailing duty investigation of *Glass Wine Bottles from China* are unsupported by substantial evidence and otherwise not in accordance with the law;

(2)   remand the *Final Determination* to the Commission with instructions to correct the errors set forth in this Complaint; and

(3)   grant such other relief as the Court may deem just and proper.

Respectfully submitted,

By: */s/ Daniel B. Pickard*
Daniel B. Pickard, Esq.
Amanda L. Wetzel, Esq.
Claire M. Webster, Esq.

**BUCHANAN INGERSOLL & ROONEY PC**
*Counsel to U.S. Glass Producers Coalition*

# **CERTIFICATE OF SERVICE**

PUBLIC SERVICE

*U.S. Glass Producers Coalition v. United States*
**Court No. 24-00199**

I hereby certify that a copy of this public submission was served on the following parties, via certified mail or registered mail, return receipt requested, on November 26, 2024.

Lynn M. Fischer Fox, Esq.
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Phone: 202-942-5646
Email: LynnFischerFox@arnoldporter.com

Christine M. Streatfeild, Esq.
Baker McKenzie LLP
815 Connecticut Avenue, NW
Washington, DC 20006
Phone: 202-452-7000
Email:
christine.streatfeild@bakermckenzie.com
grayson.myers@bakermckenzie.com

Eric S. Parnes, Esq.
Blank Rome LLP
1825 Eye Street, NW
Washington, DC 20006
Phone: 202-420-5479
Email: eric.parnes@blankrome.com
tradeservice@blankrome.com

Lizbeth R. Levinson, Esq.
Fox Rothschild LLP
2020 K Street, NW, Suite 500
Washington, DC 20006
Phone: 202-794-1182
Email: LLevinson@foxrothschild.com

Jared R. Wessel, Esq.
Hogan Lovells US LLP
555 13th Street, NW
Columbia Square
Washington, DC 20004
Phone: 202-637-5600
Email: jared.wessel@hoganlovells.com

Jeffrey S. Neeley, Esq.
Husch Blackwell LLP
1801 Pennsylvania Avenue, NW, Suite 1000
Washington, DC 20006
Phone: 202-378-2357
Email: jeffrey.neeley@huschblackwell.com

Grace Kim, Esq.
Kelley Drye & Warren LLP
3050 K Street, NW, Suite 400
Washington, DC 20007
Phone: 202-342-8400
Email:  gkim@kelleydrye.com
tradenotifications@kelleydrye.com

J. Michael Taylor, Esq.
King & Spalding, LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
Phone: 202-737-0500
Email: jmtaylor@kslaw.com
tradeservice@kslaw.com

Neil R. Ellis, Esq.
Law Offices of Neil Ellis PLLC
5335 Wisconsin Avenue, NW, Suite 440
Washington, DC 20015
Phone: 202-258-5421
Email: neil@neilellislaw.com

Antonino Bertoni
Ministry of Economy of Mexico
Pachuca 189, Col. Condesa
C.P. 06140, Cuauhtemoc
Mexico City, Mexico
Phone: +011-525-557-299-100
Email: Antonino.bertoni@economia.gob.mx

Attorney in Charge
International Trade Field Office
U.S. Department of Justice Civil Division Room 346
Third Floor
26 Federal Plaza
New York, NY 10278

Supervising Attorney Civil Division
Commercial Litigation Branch
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

Michael K. Haldenstein
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-3041
michael.haldenstein@usitc.gov

/s/ Daniel B. Pickard, Esq.
Daniel B. Pickard, Esq.
*Counsel to U.S. Glass Producers Coalition*