UNITED STATES COURT OF INTERNATIONAL TRADE

NEW YORK, NEW YORK

BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

|  |  |  |
|---|---|---|
| U.S. GLASS PRODUCERS COALITION, | ) | |
| Plaintiff, | ) | |
| v. | ) | Consol. Court No. 24-00199 |
| UNITED STATES, | ) | **PUBLIC VERSION** |
| Defendant, | ) | |
| and | ) | |
| BERLIN PACKAGING L.L.C., TRICORBRAUN INC., ENCORE GLASS, INC. | ) | |
| Defendant-Intervenors. | ) | |

**DEFENDANT-INTERVENOR ENCORE GLASS, INC.'S
RESPONSE BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT
ON THE AGENCY RECORD**

Lizbeth R. Levinson
Brittney R. Powell
Alexander D. Keyser

FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, DC 20006
Phone: (202) 794-1186

*Counsel to Encore Glass, Inc.*

August 8, 2025

# TABLE OF CONTENTS

TABLE OF CONTENTS     i

TABLE OF AUTHORITIES     ii-iii

I.     INTRODUCTION     2

II.     STATEMENTS PURSUANT TO RULE 56.2     2

    A.     Administrative Determination Sought to Be Reviewed     2

    B.     Issues Presented and Summary of the Arguments     3

       1.     Whether the Commission's Price Effects Findings is Supported by Substantial Evidence and in Accordance with Law     3

       2.     Whether the Commission's Adverse Impact Finding is Supported by Substantial Evidence and in Accordance with Law     3

       3.     Whether the Commission's Threat Finding is Supported by Substantial Evidence and in Accordance with Law     3

III.     STATEMENT OF FACTS     5

IV.     STANDARD OF REVIEW     5

V.     ARGUMENT     7

    A.   The Commission's Price Effects Analysis Is Supported By Substantial Evidence     7

       1.     The Commission Addressed Certain Business Documentation     8

       2.     The Commission's Lost Sales Findings Were Supported By Substantial Evidence     8

       3.     The Commission's Price Suppression Analysis Was Supported by Substantial Evidence     13

    B.   The Commission's Impact Analysis Was Supported by Substantial Evidence     16

    C.   The Commission's Negative Threat Determination Is Supported By Substantial Evidence     19

VI.     CONCLUSION     20

175449778.1

# TABLE OF AUTHORITIES

## FEDERAL STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i)                                          5

19 U.S.C. § 1677f(i)(3)(B)                                          3, 8

28 U.S.C. § 2639(a)(1)                                          5

## FEDERAL CASES

*Glass Wine Bottles from China,*
    89 Fed. Reg. 83,515 (Int'l Trade Comm'n Oct. 16, 2024)                                          2

*Granges Metallverken AB v. United States,*
    716 F. Supp. 17 (Ct. Int'l Trade 1989)                                          9

*ITG Voma Corp. v. U.S. Int'l Trade Comm'n,*
    253 F. Supp. 3d 1339, 1347 (Ct. Int'l Trade 2017)                                          5, 6

*Nippon Steel Corp. v. United States,*
    458 F.3d 1345, 1352 (Fed. Cir. 2006)                                          6

*Matshushita Elec. Indus. Co. v. United States,*
    750 F.2d 927, 933 (Fed. Cir. 1984)                                          6

*Nucor Corp. v. United States,*
    318 F. Supp. 2d 1207, 1247 (Ct. Int'l Trade 2004)                                          3, 6, 7

*Sango Int'l L.P. v. United States,*
    567 F.3d 1356, 1362 (Fed. Cir. 2009)                                          6

*Timken Co. v. United States,*
    699 F. Supp. 300, 306 (Ct. Int'l Trade 1988)                                          6

*Timken Co. v. United States,*
    421 F.3d 1350, 1354–57 (Fed. Cir. 2005)                                          7

*Universal Camera Corp. v. NLRB,*
    340 U.S. 474 (1951)                                          6

*USEC Inc. v. United States,*
    34 F. App'x 725, 731 (Fed. Cir. 2002)), *aff'd,* 414 F.3d 1331 (Fed. Cir. 2005)                                          6

## ADMINISTRATIVE DECISIONS

*Glass Wine Bottles from China,*
    Inv No. 701-TA-630 (Final), USITC Pub. 5068 (June 2020)                                          5

*Glass Wine Bottles from China,*
    Inv. Nos. 701-TA-703, USITC Pub. 5550 (Oct. 2024)                                          *et passim*

175449778.1

## OTHER AUTHORITIES

Uruguay Round Agreements Act, H.R. Rep. No. 103- 316, vol. I at 892 (1994) ("SAA")          7

175449778.1

## I.     INTRODUCTION

On behalf of Defendant-Intervenor Encore Glass, Inc. ("Encore Glass"), we respectfully submit this response in opposition to the motion for judgment on the agency record filed by Plaintiff U.S. Glass Producers Coalition ("Plaintiff" or the "Coalition"), ECF No. 51, 52 ("Pl. Br."). Plaintiff challenges the final negative determination of the U.S. International Trade Commission ("ITC" or "Commission") in the countervailing duty investigation of glass wine bottles from China. *See Glass Wine Bottles from China*, 89 Fed. Reg. 83,515 (Int'l Trade Comm'n Oct. 16, 2024).

Encore Glass hereby adopts and incorporates by reference the arguments presented by Defendant United States ("Defendant") in its July 25, 2025 response brief, ECF No. 60, 61 ("Def. Br."), and the arguments presented by other Defendant-Intervenors in their respective response briefs filed on August 8, 2025. Consistent with the Court's Order, Encore Glass provides additional context and argument to aid the Court's understanding of the issues raised by Plaintiff's appeal. For the reasons discussed herein and in Defendant's July 25, 2025 response brief, Encore Glass respectfully requests the Court deny Plaintiff's motion for judgment on the agency record and sustain the Commission's final negative determination.

## II.     STATEMENTS PURSUANT TO RULE 56.2

### A.     Administrative Determination Sought to Be Reviewed

Plaintiff challenges certain aspects of the Commission's final negative determination in the countervailing duty investigation of glass wine bottles from China, published October 16, 2024. *See Glass Wine Bottles from China*, 89 Fed. Reg. 83,515 (Int'l Trade Comm'n Oct. 16, 2024") ("Final Determination") (P.R. 187, 188).[1] The Commission's Views and Final Staff Report for this

---

[1]     Citations to the public and confidential administrative record for this appeal are identified as "P.R." and "C.R.," respectively.

PUBLIC VERSION

investigation were issued on October 9, 2024. *Glass Wine Bottles from China*, Inv. Nos. 701-TA-703, USITC Pub. 5550 (Oct. 2024) ("Views") (P.R. 184, C.R. 279), and Final Staff Report (C.R. 268). The period of investigation ("POI") was January 2021 through March 2024 ("interim 2024").

## B. Issues Presented and Summary of the Arguments

### 1. Whether the Commission's Price Effects Findings is Supported by Substantial Evidence and in Accordance with Law.

Yes, substantial evidence on the administrative record supports the Commission's price effect findings. The record demonstrates that subject imports pervasively oversold the domestic like product during the POI, and that subject imports were not the cause of any price suppressing or depressing effect on domestic prices. Plaintiff's argument relies on isolated pieces of data to infer impermissibly that any adverse data establishes material injury. In doing so, Petitioner ignores the full evidentiary record, which shows that the Commission's price effects findings are firmly grounded in substantial evidence and are in accordance with law.

Furthermore, the Commission is presumed to have "considered all of the evidence on the record," and Petitioner's attempt to rebut this presumption fails. *Nucor Corp. v. United States*, 318 F. Supp. 2d 1207, 1247 (Ct. Int'l Trade 2004). In accordance with 19 U.S.C. § 1677f(i)(3)(B), the Commission provided adequate explanations of the basis for its determination and addressed the relevant arguments made by interested parties. Petitioner's claims to the contrary are unfounded and should be rejected by the Court.

### 2. Whether the Commission's Adverse Impact Finding is Supported by Substantial Evidence and in Accordance with Law.

Yes, substantial evidence on the administrative record supports the Commission's adverse impact findings. The record supports the Commission's finding that there was no causal nexus

PUBLIC VERSION

between cumulated subject imports and any declines in the domestic industry's performance during the POI. Plaintiff again relies on cherry-picked data in an attempt to undermine all other data on the record relating to impact, such as a single instance of underselling in one quarter of the entire POI by one subject country (*i.e.,* Mexico). The Commission's Views demonstrate that it fully and appropriately analyzed the impact of subject imports from all subject countries and the state of the domestic industry during the entire POI in reaching its adverse impact findings. The Commission appropriately weighed the record evidence, including the domestic industry's growing market share during the POI, the predominant overselling by subject imports, and other conditions of competition, to conclude correctly that subject imports were not the cause of any injury to the domestic industry during the POI.

### 3. Whether the Commission's Threat Finding is Supported by Substantial Evidence and in Accordance with Law.

Yes, substantial evidence on the administrative record supports the Commission's threat finding. The Commission appropriately weighed the record evidence, which showed that there was no likelihood of substantially increased subject imports in the imminent future nor that such imports would have significant price or adverse impacts on the domestic industry. The Commission acknowledged that subject import market share increased slightly over the three-month interim periods, but reasonably concluded this data was not indicative of substantially increased future imports given the long-term downward trend of subject import volumes from 2021 to 2023 and the lack of competitively overlap between subject imports and the domestic industry. Defendant's Br. at 5 (P.R. 61). Encore Glass hereby endorses the Commission's arguments in Defendant's Brief.

PUBLIC VERSION

## III.  **STATEMENT OF FACTS**

We hereby incorporate by reference the Commission's recitation of the facts for judicial efficiency and provide the following additional facts for further context.  Defendant's Br. at 5-7 (P.R. 61).

The Coalition, led by Ardagh Glass, Inc. filed its Petitions in this case on December 29, 2023 alleging material injury and threat thereof to the U.S. glass wine bottle industry by reason of imports of certain glass wine bottles from Chile, China, and Mexico (the "subject imports"). The domestic like product covered glass wine bottles in sizes 740-760 milliliters with particular dimensions.  We note, however, that the procedural history of this case precedes the filing of the Petitions on December 29, 2023.  Approximately four years prior, in September 2019, a different coalition led by Ardagh Glass, Inc. called the "American Glass Packaging Coalition" filed petitions alleging material injury and threat thereof to the U.S. glass packaging industry by reason of a broader set of glass containers from China.  *See* Final Staff Report at I-5 (C.R. 268).  The Commission reached unanimous negative determinations in that case. *Id.; Glass Wine Containers from China*, Inv No. 701-TA-630 (Final), USITC Pub. 5068 (June 2020) ("Glass Containers"), and the accompanying Views of the Commission.

## IV.  **STANDARD OF REVIEW**

The Court will uphold the ITC's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *see also ITG Voma Corp. v. U.S. Int'l Trade Comm'n,* 253 F. Supp. 3d 1339, 1347 (Ct. Int'l Trade 2017).  The Commission's determinations are "presumed to be correct. The burden of proving otherwise shall rest upon the party challenging such decision." 28 U.S.C. § 2639(a)(1).  "A party challenging the Commission's determination under the substantial evidence

5

PUBLIC VERSION

standard 'has chosen a course with a high barrier to reversal.'" *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted).

Substantial evidence is relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Matshushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (citations omitted). "The substantial evidence inquiry takes into account the entire record, which includes evidence that supports and detracts from the conclusion reached." *Sango Int'l L.P. v. United States*, 567 F.3d 1356, 1362 (Fed. Cir. 2009). In reviewing the record as a whole, "[i]t is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States*, 699 F. Supp. 300, 306 (Ct. Int'l Trade 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent the court from holding that the Commission's determinations, findings, or conclusions are supported by substantial evidence." *ITG Voma Corp. v. U.S. Int'l Trade Comm'n*, 253 F. Supp. 3d 1339, 1347 (Ct. Int'l Trade 2017) (citing *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006)) (citations omitted). Thus, a Court may not, "even as to matters not requiring expertise…displace the [      ] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Universal Camera Corp.,* 340 U.S. at 288 (1951).

Furthermore, the Commission is "presumed to have considered all of the evidence on the record," and therefore is not "required to explicitly address every piece of evidence presented by the parties" during an investigation. *Nucor Corp. v. United States*, 318 F. Supp. 2d 1207, 1247 (2004) (quoting *USEC Inc. v. United States*, 34 F. App'x 725, 731 (Fed. Cir. 2002)), *aff'd,* 414 F.3d 1331 (Fed. Cir. 2005).

6

PUBLIC VERSION

## V.    ARGUMENT

Encore Glass hereby joins in and incorporates by reference the arguments presented by Defendant United States in its response brief filed on July 25, 2025, and by the other Defendant-Intervenors in their response briefs filed on August 8, 2025.

### A.  The Commission's Price Effects Analysis Is Supported By Substantial Evidence.

Plaintiff contends that the Commission failed to address sufficiently or at all certain evidence regarding purported underselling and lost sales, price suppression, and arguments concerning the domestic industry's alleged state of injury.  It is a well-settled principal that the Commission is presumed to have "considered all of the evidence on the record." *Nucor Corp. v. United States*, 318 F. Supp. 2d 1207, 1247 (Ct. Int'l Trade 2004).  Despite Petitioner's complaints, there is simply no statutory requirement that the Commission must address every piece of evidence in its determination.  The Commission need only address the "issues material to {its} determination" so that the "path of the agency may reasonably be discerned." Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, vol. I at 892 (1994) ("SAA") (quotations omitted); *see also Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1354–57 (Fed. Cir. 2005).

Plaintiff wrongly claims that the Commission did not provide reasoned analyses or failed to address meaningfully certain issues or evidence in its price effects analysis.  *See* Plaintiff's Br. at 13-20.  Specifically, Plaintiff alleges that the Commission did not: 1) meaningfully address certain business documentation regarding alleged underselling; 2) address the alleged frequency of underselling and purported lost sales; and 3) fully address alleged evidence of price suppression. As discussed in the Defendant's Response Brief, the Commission addressed in its Views the issues

PUBLIC VERSION

material to its determination.  We hereby provide additional context in support of the Defendant's arguments.

### 1.  The Commission Addressed Certain Business Documentation

Plaintiff alleges that the Commission failed to address meaningfully certain business documentation, such as e-mails, that it contends supports its arguments of underselling by subject imports.  Plaintiff's Br. at 18 (P.R. 52).  Plaintiff contests the Commission's finding that the business documentation "does not detract from the other record evidence,"  Views at 43 (P.R. 184), and essentially asks the Court to reweigh the evidence.  As argued in the Defendant's Brief, the Commission considered all of the record evidence, including the business documentation that Plaintiff submitted, and which the Commission addressed in its Views.  Defendant's Br. at 24.

Indeed, the Commission stated expressly that the evidence cited by Petitioner did not "detract from the other [substantial] record evidence, including pricing data, purchase cost data, and shipment data, indicating that subject imports were generally priced higher than the domestic like product..."  Views at 58 (P.R. 184).  Accordingly, it is clear that the Commission did consider the business documentation in its analysis, but ultimately determined that other evidence on the record overwhelmingly outweighed the anecdotal business documentation. Simply,  the Commission was not required to re-analyze the pricing data, purchase cost data, etc., solely to address Plaintiff's anecdotal business documentation.

In sum, the Commission met its obligation to include in the final determination an "explanation of the basis for its determination that addresses relevant arguments that are made by interested parties." *See* 19 U.S.C. § 1677f(i)(3)(B).  Moreover, the Commission's decision not to discuss explicitly in its determination certain information or "respond to each piece of evidence presented by the parties" does not establish that the information was not considered in reaching

PUBLIC VERSION

the final determination, nor does it otherwise render the determination unsupported by substantial evidence. *See Granges Metallverken AB v. United States*, 716 F. Supp. 17 (Ct. Int'l Trade 1989) (citations omitted). Accordingly, the Court should disregard Plaintiff's complaints to the contrary and find that they are without merit.

### 2. The Commission's Lost Sales Findings Were Supported By Substantial Evidence

The Commission properly considered the evidence related to lost sales in its Final Determination, and referenced that evidence to support its findings. Plaintiff now argues that the Commission failed to adequately address the evidence it provided concerning lost sales. Specifically, Plaintiff argues that despite the Commission's thorough and exhaustive lost sales analysis, it "failed to address one of Plaintiff's main arguments, in effect the great frequency of confirmed lost sales was evidence of negative price effects." Pl. Br. at 20. Plaintiff's argument regarding lost sales is demonstrably false, as the Commission did consider the frequency of lost sales.

Plaintiff's argument that frequent lost sales during the POI indicated negative price effects in the domestic industry first requires there to be evidence showing that there were frequent lost sales. If lost sales were not frequent, then by Plaintiff's own logic, they could not indicate negative price effects were present in the domestic market. The Commission addressed Plaintiff's argument by finding that lost sales were not frequent during the POI. Commission's Views at 54 (P.R. 184). As discussed further below, the Commission found that other evidence on the record contradicted the anecdotal lost sales information provided by the domestic industry. The Commission also found that confirmed lost sales data represented a meager portion of the total sales of subject imports. Consequently, the Commission was thorough in its response to the domestic industry's lost sales allegations. It acknowledged and analyzed both the anecdotal and specific lost sales data

PUBLIC VERSION

on the record, and found that both did not show the domestic industry lost significant sales to subject imports primarily due to price. Without supporting data or compelling evidence of significant lost sales based on price, there was no basis for the Commission to find that lost sales were frequent or prevalent enough to indicate negative price effects.

The record did not indicate that the domestic industry frequently lost sales to subject imports primarily on the basis of price. Before the Commission, Plaintiff attempted to bolster the weak lost sales data on the record by claiming that there were many instances of lost sales that were not reflected in the data. *Id*. at 57-58. Domestic producers of glass wine bottles, including Plaintiff, provided anecdotal evidence to support their arguments, including emails with customers, among other information. *Id*. The Commission found that, "[t]he correspondence that Domestic Parties submitted does not contradict the lost sales information on the record, however, or indicate that there was a significant volume of lost sales to subject imports beyond that confirmed by responding purchasers." *Id*.

In reaching its determination, the Commission considered and addressed most of the anecdotal evidence of lost sales provided by the domestic industry. The first of piece of anecdotal evidence discussed by the Commission was Ardagh's claim that it lost its [          ] customer, [

                    ], to subject imports. *Id*. at 58 fn.228 (C.R. 279). The Commission noted that [                    ] reported in its own questionnaire response that its [

                                                     ]. *Id*. The Commission then acknowledged Ardagh's claim that it lost the business of its exclusive distributor TricorBraun. *Id*. The Commission responded to the claim by citing record evidence that showed TricorBraun switched its business from Ardagh to [                                             ] because Ardagh failed to meet its supply commitments. *Id*.

PUBLIC VERSION

The Commission further addressed and disproved the domestic industry's claims relating

to the lost business of specific wineries like [

].  *Id*.  The Commission found that Ardagh had [

].  *Id*.  For [                     ], certain

emails were provided in which [             ] stated Ardagh's price [

].  *Id*.  The Commission observed that the email communications with [

] did not indicate if the competitor [                         ] and that other

evidence indicated [                 ] purchases of domestic glass wine bottles increased by [

] percent during the POI and that [                         ] purchases were of domestic glass

wine bottles.  *Id*.  Lastly, O-I Glass (a domestic producer) provided email communications with [

] to support that it had lost its business to subject imports.   In those

communications, however, the Commission noted that [                 ] stated that [

" ]  *Id*.  Thus, the Commission found that substantial evidence on the

record contradicted and undermined the anecdotal evidence provided by the domestic industry to

support its allegations of lost sales.

The Commission also considered specific lost sales data on the record.  The Commission

noted that thirteen purchasers reported purchasing subject imports that had a lower price, but only

five of those companies reported purchasing the subject imports because of their price.  *Id*. at 53-

54.  Those five companies reported purchasing a mere [        ] gross wine bottles from subject

sources.  *Id*.  The [        ] gross wine bottles of "confirmed lost sales" amounted to less than [

] percent of total apparent U.S. consumption during the POI, since total apparent U.S.

11

consumption of glass wine bottles during the POI was [          ] gross bottles.  *Compare id.*

*with also* Final Staff Report at Tables V-21 and C-1, CR273.  The [          ] gross was also

"equivalent to [      ] percent of the reported purchases and imports of glass wine bottles from

subject sources over the POI (27.7 million gross)."  Views at 54 (P.R. 184).  Based on these figures,

the Commission correctly found that "confirmed" lost sales data on the record showed that the

domestic industry lost an insignificant amount of sales to subject imports during the POI on the

basis of price.

Plaintiff's theory that lost sales were frequent in the U.S. market during the POI also

implicitly suggests that subject imports were generally lower priced than the domestic industry

during the POI.  The Commission found, however, that, "the pricing data show predominant

overselling by subject imports during the POI," and that the purchase cost data for subject imports

also "generally exceeded the sales price for domestically produced glass wine bottles."  *Id.*  The

staff report showed that subject imports oversold the domestic like product in 134 out of 143, or

93.7 percent of quarterly price comparisons in pricing products 1 through 5.  Final Staff Report at

V-34 (P.R. 165).  The record also showed that subject imports oversold the domestic industry in

sales of the landed duty-paid units in the majority of quarterly comparisons.  *Id.* at V-35.  The

pricing data on the record thereby supported the Commission's finding that lost sales due to price

were infrequent during the POI.

The Commission's final determination also considered whether subject imports caused

negative price effects during the POI.  The Commission found that subject imports were not

depressing or suppressing prices in the domestic market, and thereby were not causing any

negative price effects.  Views at 61, 65 (P.R. 184).  To find price depression the record must show

that the domestic industry actually decreased its prices during the POI, while a finding of price

PUBLIC VERSION

suppression requires evidence that the domestic industry was prevented from increasing its prices by subject imports.

The Commission found that domestic prices increased for six of the eight pricing products during the POI.  Views at 61 (P.R. 184).  Further, the Commission's staff report shows that the domestic industry was able to increase its unit value by [          ] from 2021 to 2023.  Final Staff Report at C-6 (C.R. 273).  The Commission found that the domestic industry's increasing sales prices and "ability to pass through almost all of its increased costs to purchasers through higher prices during a period of declining apparent U.S. consumption," indicated that subject imports did not suppress prices for the domestic like product.  Views at 65 (P.R. 184).  The evidence on the record did not show that the domestic market suffered any negative price effects as the result of subject imports.  The Commission could not have reasonably concluded that supposedly frequent lost sales were having a negative price effect on the domestic market where the domestic industry did not experience negative price effects.

### 3. The Commission's Price Suppression Analysis Was Supported by Substantial Evidence

The Commission's Views also fully analyzed the issue of price suppression and found, based on substantial evidence, that subject imports were not the cause of any cost-price squeeze experienced by the domestic industry during the POI.  The Commission ultimately found that because the domestic industry was able to increase its prices for six of the eight product categories during the POI while experiencing a steep decline in demand (as measured by apparent U.S. consumption), the record did not indicate that subject imports were the cause of any price suppression experienced by the domestic industry.  Views at 61 (P.R. 184).  The Commission did not ignore certain issues experienced by the domestic industry during the POI.  In its analysis, the Commission noted that though the domestic industry was able to increase its prices, its costs of

13

goods ("COGS") over the period increased at a higher rate, resulting in the so-called "cost-price squeeze" referenced by Plaintiff in its brief. *Id*.; *see also* Pl. Br. at 20-22. The Commission observed that the domestic producers, however, had different trends in their COGs to Net Sales ratios, indicating that the "cost-price squeeze was due to internal factors, not external industry wide factors, such as subject imports." Views at 61 fn 244 (P.R.184).

Plaintiff argues that the Commission failed to provide an adequate explanation of its findings on price suppression, and claims that the Commission misapplied the statutory standard. Pl. Br. at 20. The Commission's determination, however, did not suggest that price suppression needed to be experienced by each member of the domestic industry "uniformly and at the same time" as Plaintiff suggests. *Id*. Instead, the Commission properly considered the entire domestic industry and still found a lack of evidence of price suppression. There are only three domestic producers of glass wine bottles, Ardagh, O-I Glass, and Gallo. In 2023, Gallo represented [

] of U.S. producers' share of net sales, O-I Glass represented [                    ], and Ardagh represented [                    ]. Final Staff Report at VI-2 (C.R. 273). The Commission found that [


]. Views at 61 fn. 244, CR279. Therefore, [                                        ] of total U.S. producers' share of net sales, experienced an increase in its [                        ]. *Id*. Plaintiff's argument that the Commission failed to address the entire domestic industry is patently untrue. The record considered by the Commission, clearly considered that the majority of the domestic industry did not experience an [        ] in its COGs to Net Sales ratio during the POI. It is the Plaintiff, rather than the Commission, that wishes to attribute the poor performance of [    ] company to the entire domestic industry.

14

PUBLIC VERSION

The Commission did not merely cite the differing COGs to Net Sales Ratio among domestic producers in making its determination but also referred to specific evidence supporting that the cost-price squeeze in the domestic industry was the result of internal matters.  The Commission found that "domestic producers also reported certain notable non-recurring items in other factory costs, namely costs associated with [                                              ], and a [                          ], each of which resulted in production curtailments." *See id*. at 63 fn. 247.  The Commission determined that when those non-recurring costs were removed from "total OFC, the domestic industry's COGs to net sales ratio actually declined between 2021 and 2023 and over the interim periods." *Id*.

Plaintiff continues to mischaracterize the Commission's findings by focusing on other production curtailments and stoppages experienced by the domestic industry during the POI, and claims that since those curtailments were caused by subject imports, the Commission cannot remove them from the other factory costs.  Pl. Br. at 21.  It is impossible for the [                          ] and a [                              ], however, to be blamed on subject imports.   Views at 63 fn. 247 (C.R. 279).  Those one-time and unexpected production curtailments were the ones specifically addressed by the Commission in its determination, and the impact of those events on the domestic industry's COGs to Net Sales ratio cannot be attributed to subject imports. Views at 63 fn. 247 (C.R. 279).

We also note that the impact of subject imports on domestic industry pricing would be attenuated by the different market segments to which the domestic industry and subject imports cater.  The Commission staff found that the vast majority of subject imports were case packed, accounting for more than [          ] of subject imports from 2021 through 2023.  Final Staff Report at IV-9 (C.R. 273).  Case packaging caters to the preferences of small and medium sized

PUBLIC VERSION

wineries, which comprised the majority of importers' customers during the POI. *Id*. at II-4. By contrast, two-thirds of domestic industry's glass wine bottles were bulk packed, which directly caters to the preferences of larger wineries and distributors, with over [          ] of domestic sales being made to those customers. *Id*. Therefore, because the domestic industry and subject imports largely do not cater to the same kinds of customers, the impact of one's price on the other would be similarly attenuated.

**B. The Commission's Impact Analysis Was Supported by Substantial Evidence.**

The Commission also correctly found that there was no causal nexus between cumulated subject imports and any declines in the domestic industry's performance during the POI. The piecemeal examples cited by Plaintiff that supposedly contradict the Commission's views are not sufficient to erode the substantial evidence supporting the ITC's ultimate findings. One small section of the Commission's Views on impact with which Plaintiff takes particular issue is where the Commission found subject imports from Mexico in interim 2024 were overselling the domestic industry. Pl. Br. at 33-34. Plaintiff argues that the staff report did not support this finding and therefore the Commission's findings on impact were not supported by substantial evidence.

Plaintiff's argument treats data for one country in one quarter of the POI as sufficient to undermine all other data on the record relating to impact. Yet, Plaintiff fails to explain how data from Mexico during the interim period alone is sufficient to undo the Commission's finding that *cumulative* subject imports from three countries (including Mexico) did not cause any injury experienced by the domestic industry during the whole POI. *See* Views at 66-74 (P.R. 184). The Commission's analysis of impact discussed imports from all subject countries and the state of the domestic industry throughout the whole POI. Though the Commission noted that the domestic industry experienced some difficulties from 2021 through 2023, it found that there was no causal

16

link between subject imports and the issues experienced by the domestic industry. *Id*. at 66-67. The Commission cited to significant evidence on the record to support its finding that that subject imports were not the source of the domestic industry's complications during the POI, including the domestic industry's growing market share during the POI, subject imports consistently overselling the domestic industry, and the significant decline in apparent U.S. consumption that prevented it from fully passing on its increased costs to customers. *Id*. at 66-70.

Plaintiff's argument focuses on the interim period because the pricing data and market share information from the remainder of the POI shows definitive overselling by subject imports and a clear decline in subject imports market shares. *Id*. at IV-32, V-34 (C.R. 273). First, subject imports oversold the domestic industry in 134 out of 143 quarterly periods examined during the POI, and subject imports from Mexico specifically oversold the domestic industry in 43 out of 50 quarterly comparison periods. *Id*. at V-34 (P.R. 165). Further, subject imports oversold the domestic industry by [      ] dollars on average during the POI, with overselling ranging from  [                    ]. *Id*. at V-32 (C.R. 273). Subject imports from Mexico specifically oversold the domestic industry by [                ] on average, with overselling ranging from [                    ]. *Id.* Second, cumulative subject import market share also declined throughout the POI, from [                ] in 2021 to [                                        ption. *Id*. at IV-32 (C.R. 273). Though it may seem that subject imports gained market share when comparing only the 2023 and 2024 interim periods, subject import market share in interim 2024 was still lower than in 2021, representing an overall decline. *Id*. at IV-32 (P.R. 165).

Plaintiff conveniently ignores that the Commission's findings on impact were not based on the market share or pricing of imports only from Mexico during the interim period of 2024. *Id*.

PUBLIC VERSION

Indeed, the Commission specifically found that "[a]lthough cumulated subject imports' market share was higher in interim 2024 than in interim 2023, the record does not show that the increase was driven by import underselling." *Id*. at 73. The Commission's determination cited significant data from the Staff Report to support its conclusion. For example, for the [



 ]. Final Staff Report at Tables V-5 through V-9 (C.R. 273). Cumulative subject imports still oversold the domestic industry in 8 out of 11 quarterly comparisons for interim 2024, and oversold the domestic industry by an average of [    ] percent. *Id*. at V-34 (C.R. 273). Further, imports from Mexico also oversold the domestic industry for pricing products [

 ] in interim 2024, and represented only a [       ] of total subject imports for pricing product 1. *Id*. at Tables V-5 through V-12. Indeed, subject merchandise from Mexico was imported into the United States at a much lower quantity in interim 2024 than almost every other quarter during the POI for all pricing products. *Id*. at Tables V-5 through V-9. For example, subject imports from Mexico per quarter of pricing product 1 were [                ] on average during the POI, but only [              ] in interim 2024. *Id*.

The Commission's determination is also not undone by insignificant gains in subject import market share during the interim period. The Commission specifically noted that the domestic industry's performance was improving at the same time that subject import market share increased by a meager 1.6 percent from interim 2023 to interim 2024. Views at 74 (P.R. 184). The Commission found that the "increase in cumulated subject import market share in interim 2024 compared to interim 2023 did not prevent the domestic industry from increasing its unit net sales value by more than the increase in its unit COGs…This enabled the industry to improve its financial performance by almost every measure in interim 2024 relative to interim 2023." Views

PUBLIC VERSION

at 74 (P.R. 184).  The domestic industry's financial performance in the interim period actually improved when there was a slight increase in subject import market share and evidence of relatively insignificant underselling.  Therefore, substantial evidence on the record supported the Commission's finding that subject imports did not negatively impact the domestic industry during the POI.

## C. The Commission's Negative Threat Determination Is Supported By Substantial Evidence.

The Commission found that cumulated subject imports of glass wine bottles do not threaten the domestic industry with material injury in this investigation.  Petitioner argues that the Commission's conclusion is "remarkable," almost entirely because subject import market share increased by 1.6 percentage point in interim 2024 as compared to the same period in 2023.  Pl. Br. at 34. Yet, Petitioner ignores the Commission's extensive discussion and citations to the record supporting its conclusion, including that the domestic industry and nonsubject imports gained market share from subject imports during the full years of the POI (i.e., 2021 to 2023), and that "subject imports ended the POI with a lower market share than at the beginning of the period." Views at 80 (P.R. 184).  The Commission also found record evidence does not indicate that a significant increase of subject imports is likely to occur in the imminent future, as U.S. importers reported arranging for declining volumes of imports in the second through fourth quarters of 2024. *Id.* at 81 (P.R. 184).  In addition, foreign producers projected their inventories would decrease in 2024 and 2025.  *Id.* at 82 (P.R. 184).  These factors, among others, discussed in the Commission's Views and at length in Defendant's Brief support the Commission's negative threat determination.

PUBLIC VERSION

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Encore Glass respectfully requests that this Court affirm the Commission's final negative determination and deny Plaintiff's Motion for Judgment on the Agency Record.

Respectfully submitted,

*/s/ Brittney R. Powell*
Lizbeth R. Levinson
Brittney R. Powell
Alexander D. Keyser

FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, DC 20006
Phone: (202) 794-1186

*Counsel to Encore Glass, Inc.*

August 8, 2025

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel at Fox Rothschild LLP  hereby certifies that the foregoing brief complies with the word-count limitation in the Standard Chambers Procedure. This brief contains 5,884 words according to the word-count function of the word-processing software used to prepare the brief.  This is less than the 10,500 words permitted for response briefs.

Respectfully submitted,

*/s/ Brittney R. Powell*

FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, DC 20006
Phone:  (202) 794-1186

*Counsel to Encore Glass, Inc.*

August 8, 2025